IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIELLE MARIE WILCOX,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Civil Action No. 23-1823 |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY,    ) | |
| ) | |
| Defendant.    ) | |

**O R D E R**

AND NOW, this 31st day of March, 2025, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 16) filed in the above-captioned matter on March 28, 2024,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 13) filed in the above-captioned matter on February 23, 2024,

IT IS HEREBY ORDERED that said Motion is GRANTED. This matter is hereby reversed and remanded to the Commissioner of Social Security ("Commissioner") for the calculation and award of benefits under sentence four of 42 U.S.C. § 405(g) consistent with this Order.

**I.     Background**

Plaintiff Danielle Marie Wilcox protectively filed a claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.*, effective July 27, 2020, claiming that she became disabled on April 19, 2012, due to type 1 diabetes, coronary disease, and diabetic retinopathy. (R. 13, 299-305, 336). After being denied initially on February 11, 2021, and upon reconsideration on May 18, 2021, Plaintiff sought, and obtained, a telephone hearing before an Administrative Law Judge ("ALJ"). (R. 13, 153, 180, 196). The

initial hearing was held on October 21, 2021, and a supplemental hearing was held on May 10, 2022. (R. 13, 34-78, 80-107). In a decision dated July 12, 2022, the ALJ denied Plaintiff's request for benefits. (R. 13-24). On August 22, 2023, the Appeals Council declined to review the decision. (R. 1-4). Plaintiff filed an appeal with this Court, and the parties have filed cross-motions for summary judgment.

II.     **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record, and the scope of that review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. *See* 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting § 405(g)); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence). If the district court finds this to be so, it must uphold the Commissioner's final decision. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The Court may not set aside a decision that is supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986)).

"Substantial evidence" is defined as "more than a mere scintilla." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). However, a "'single piece

of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.'" *Id.* So as to facilitate the district court's review, an ALJ's findings must "be accompanied by a clear and satisfactory explication of the basis on which [they] rest[]." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Decisions that are conclusory in their findings or indicate the ALJ's failure to consider all the evidence are not supported by substantial evidence. *See id.* at 705-06. Moreover, the Court must ensure the ALJ did not "reject evidence for no reason or for the wrong reason." *Id.* at 706 (citing *King v. Califano*, 615 F.2d 1018 (4th Cir. 1980)).

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. *See Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" *Id.* at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration ("SSA") has promulgated regulations incorporating a five-step sequential evaluation process in guiding ALJs in determining whether a claimant is under a disability as defined by the Act. *See* 20 C.F.R. § 416.920. At Step One, the ALJ must determine whether the claimant is currently engaging in substantial gainful activity. *See id.* at

§ 416.920(a)(4)(i). If so, the disability claim will be denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. *See* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Id.* at § 416.922. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the ALJ must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment. *See id.* at § 416.920(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

In considering these steps, the ALJ must formulate the claimant's residual functional capacity ("RFC"). A claimant's RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. *See Fargnoli*, 247 F.3d at 40; 20 C.F.R. § 416.945(a). At Step Four, it is the claimant's burden of demonstrating an inability to perform his or her past relevant work. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). If the ALJ determines that the claimant lacks the RFC to resume his or her former occupation, the evaluation then moves to the fifth and final step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. *See id.* at § 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC, age, education, and past work experience. *See id.* The

ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* at § 416.923.

### III. The ALJ's Decision

In his July 12, 2022 decision, the ALJ applied the sequential evaluation process and found that Plaintiff had not been engaged in substantial gainful activity since the application date of July 27, 2020. (R. 16). The ALJ also found that Plaintiff met the second requirement of the process insofar as she had the severe impairments of type 1 diabetes mellitus, diabetic retinopathy, hypertension, myocardial infarction (status post stent placement), and coronary artery disease. He found that Plaintiff's other alleged impairments – pancreatitis, degenerative disc disease, anemia, and seizures – did not constitute severe impairments. (*Id.*). The ALJ concluded that none of Plaintiff's impairments met any of the listings that would satisfy Step Three. (R. 16-17).

The ALJ found that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. § 416.967(b), except that she:

- can climb ramps and stairs occasionally and never climb ladders, ropes, or scaffolds;
- can occasionally balance, stoop, kneel, crouch, and crawl;
- is unable to work in positions that require binocular vision (such as positions that require depth perception) or require reading newspaper article-sized print;
- can never work at unprotected heights and never work in close proximity (*i.e.*, within arm's reach of) dangerous moving mechanical parts and can never operate a motor vehicle; and
- can work in conditions of humidity and wetness; excessive levels of dust, noxious odors, fumes, and pulmonary irritants; extreme cold and extreme hear; and vibration occasionally.

(R. 17-18). At Step Four of the process, the ALJ, upon consulting a vocational expert ("VE"), found that Plaintiff could not perform her past work as a deli worker. (R. 22, 72). At Step Five, however, the VE testified that Plaintiff, based on her age, education, work experience, and RFC, could perform other jobs in the national economy, including the representative occupations of

5

tanning salon attendant, with 11,900 jobs available nationally, and arcade attendant, with 8,100 jobs nationally. (R. 74-75). The ALJ accepted this testimony and found that Plaintiff could perform a significant number of jobs in the national economy. Accordingly, he found that Plaintiff was not disabled. (R. 22-24).

## IV.  Legal Analysis

Plaintiff argues that the ALJ failed to explain how the record demonstrates that she has the capacity to perform work that requires near vision acuity despite three medical opinions finding she lacked such acuity. She contends that this failure is material because the occupations the ALJ found her capable of performing require near acuity. Under the facts of this case, the Court agrees and finds reversal with a remand for the award of benefits to be the appropriate remedy here.

Plaintiff asserts, correctly, that the consultative examiner, John Missry, M.D., and both state agency reviewing consultants identified that she was limited as to her near vision acuity. (R. 567-68, 575, 146, 173). While Plaintiff acknowledges that the ALJ did include some visual limitations in the RFC, including that she could not read newspaper article-sized print, she argues that these limitations did not adequately accommodate the shared opinion of the three experts regarding her lack of near acuity. She further points out that, pursuant to the *Dictionary of Occupational Titles* ("DOT"),[1] both of the jobs the ALJ found her capable of performing – tanning salon attendant (DOT No. 359-567-014) and arcade attendant (DOT No. 342.667-014) – require some degree of near vision acuity. She argues that the VE's statement that the DOT does

---

[1]  "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." *McHerrin v. Astrue*, Civ. No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (citing S.S.R. 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000)).

not address the issue of reading newspaper article-sized print is insufficient to address this potential conflict.

In vetting Plaintiff's claims, the Court realized that one of these two jobs, tanning salon attendant, does not actually appear in the DOT or in its companion document – the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO"). This Court is certainly not the first to make this discovery; several courts have recognized that the position of tanning salon attendant is one of a number of jobs assigned a DOT number but not included in the DOT and that no job in the DOT or SCO has a number of 359-567-014. *See Richard C. v. King*, No. 4:23-CV-922, 2025 WL 376055, at *5 (M.D. Pa. Feb. 3, 2025); *James S. v. Comm'r, Soc. Sec.*, 3:18-cv-394-JO, 2019 WL 4345662, at *5 (D. Ore. Sept. 11, 2019); *Terry T. v. Saul*, 19-CV-684-CVE-CDI, 2021 WL 981284, at **3-4 (N.D. Okl. Mar. 16, 2021); *Grady v. Colvin*, 4:14-cv-1893-JAR, 2016 WL 695603, at *7 (E.D. Mo. Feb. 22, 2016); *Sharol W. v. O'Malley*, No. 21-C-3484, 2023 WL 9000493, at *6 (N.D. Ill. Dec. 28, 2023). The question thus becomes what this means to the Court's analysis.

There is no express requirement in the Social Security Act that work available in the national economy that would satisfy the Commissioner's burden at Step Five must be described in the DOT. *See James v. Colvin*, No. CIV.A. H-14-1650, 2015 WL 6394423, at *25 (S.D. Tex. Sept. 30, 2015), *report and recommendation adopted sub nom. James v. Comm'r of Soc. Sec.*, No. CIV.A. H-14-1650, 2015 WL 6440301 (S.D. Tex. Oct. 21, 2015). However, the Act does require an ALJ to consider the DOT, to determine whether there are inconsistencies between the testimony of a VE regarding a claimant's ability to perform a position and the job's description in the DOT, and if so to reconcile those inconsistencies. *See* 20 C.F.R. § 416.966(d)(1); S.S.R. 00-4p at *2. As several courts have pointed out, when an ALJ relies on a VE's testimony about a

job, like a tanning salon attendant, that is not in the DOT at all, there remains an unresolved potential conflict that must be resolved. *See James S.*, 2019 WL 4345662, at *5; *Terry T.*, 2021 WL 981284, at *4; *Sharol W.*, 2023 WL 9000493, at *6. This appears to be the case here.

The ALJ did ask the VE whether his testimony, including that Plaintiff could do the job of tanning salon attendant, was consistent with the DOT. The VE responded, *inter alia*, that the DOT did not address the RFC limitation as to reading newspaper article-sized print, and that his testimony that Plaintiff could still perform this work was based on his personal experience. (R. 23, 76). However, this comes far short of acknowledging that the DOT and SCO do not even contain a description of the requirements to work as a tanning salon attendant. Indeed, given the VE's testimony and the lack of a definition for the tanning salon attendant position in the DOT, it is not clear how he determined the requirements of the job or that Plaintiff met these requirements despite her limitations. Therefore, there is simply no record support for the ALJ's finding that Plaintiff could perform such work.

The VE's testimony likewise does not address the requirements of the position as set forth in the vocational resource where it does appear – the Department of Labor's online database O*NET. Despite not appearing in the DOT or SCO, the position does appear under No. 359-567-014 in the newer O*NET database. There, however, the job is described as requiring a fairly high level of near vision; this ability is listed as the fifth most important out of 52 potentially relevant worker characteristics. *See* O*NET OnLine, www.onetonline.org/link/details/39-3093.00 (last visited Mar. 31, 2025). The ALJ's failure to address whether the VE's testimony was consistent with the position's description and requirements in the O*NET, the only vocational resource in which it appears, was therefore material. *See Terry T.*, 2021 WL 981284, at *4 (remand warranted where VE failed to reconcile

8

testimony with tanning salon attendant's O*NET characteristics); *Sharol W.*, 2023 WL 9000493, at *6 (same).

There is, of course, another job that the ALJ, based on the VE's testimony, found Plaintiff capable of performing – arcade attendant – which ***does*** appear in the DOT and SCO.[2] Courts have found an ALJ's failure to address potential inconsistencies regarding the tanning salon attendant position to be harmless error where the record reflects other jobs the claimant can perform that exist in sufficient numbers in the national economy. *See Richard C.*, 2025 WL 376055, at *6. However, the Court cannot make such a finding here. First, pursuant to the SCO, the position of arcade attendant requires at least occasional near acuity. *Id.* at 365. It is not clear to the Court that the discussion between the VE and the ALJ regarding print size adequately addressed a potential conflict between the requirements of this job and the seemingly accepted finding that Plaintiff has limited near acuity, particularly in light of the VE's failure to adequately address the tanning salon attendant position.

Regardless, according to the VE, there are only 8,100 arcade attendant positions nationwide. (R. 74-75). The Commissioner bears the burden of demonstrating that the claimant can perform jobs existing in the national economy at the fifth step of the sequential analysis. *See Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014). The United States Court of Appeals for the Third Circuit has stated that "there is no precise estimate for what constitutes 'significant numbers' of jobs under the Social Security Act," *Young v. Astrue*, 519 Fed. Appx. 769, 772 (3d Cir. 2013) (citation omitted), and in fact, has held that the Commissioner's burden is satisfied if the ALJ identifies at least one occupation with a significant number of jobs in the national

---

[2] The Court notes that the VE also mentioned a third potential job, laundry folder (DOT No. 369.687-018), but the ALJ did not rely on this position in finding Plaintiff could perform substantial work at Step Five. (R. 23, 74). While the ALJ did not specifically explain why he did not rely on the laundry folder job, the Court notes that, pursuant to the SCO, the position requires frequent near acuity. *See id.* at 313.

economy that the claimant can perform. *See Wilkinson v. Comm'r of Soc. Sec.*, 558 Fed. Appx. 254, 256 (3d Cir. 2014) (citing 20 C.F.R. §§ 404.1566(b), 416.966(b)). Nonetheless, 8,100 is a very modest number of jobs and less than what many courts have found to be sufficient to satisfy the Commissioner's Step Five burden. *See Grullon v. O'Malley*, No. 3:23-CV-745, 2024 WL 4643518, at *9 (M.D. Pa. Oct. 31, 2024) ("[W]hen the number of jobs identified in the national economy totals less than 10,000 positions, or the number of regional jobs falls below 100, courts have frequently found that the Commissioner's burden of proving at Step 5 that jobs existed in significant numbers in the national economy has not been met.") (collecting cases); *Sheerer v. Saul*, No. 18-1261, 2020 WL 758823 (W.D. Pa. Feb. 14, 2020) (remanding where only 6,600 jobs were found to be available in the national economy). *See also Paul B. v. Comm'r of Soc. Sec.*, No. 318CV05218BHSTLF, 2019 WL 2013835, at *3 (W.D. Wash. Apr. 16, 2019), *report and recommendation adopted,* No. C18-5218 BHS, 2019 WL 2005801 (W.D. Wash. May 6, 2019); *Isaac v. Saul*, No. 2:20-CV-11573, 2021 WL 4770122, at *6 (E.D. Mich. Apr. 29, 2021), *report and recommendation adopted sub nom. Isaac v. Comm'r of Soc. Sec.*, No. 20-11573, 2021 WL 4167211 (E.D. Mich. Sept. 14, 2021) (both finding that approximately 8,000 available jobs is not a significant number of jobs nationwide).

Given that the Court has found that the ALJ's reliance on the tanning salon attendant position was improper, such a relatively small number of available positions is not sufficient to establish that work exists in significant numbers in the national economy that Plaintiff can perform, particularly given the uncertainty as to whether there is a conflict with Plaintiff's ability to perform the arcade attendant position. As such, the Commissioner failed to meet his Step Five burden, and remand is necessary. The question is whether that remand should be for further consideration or for an award of benefits. "A district court, after reviewing the decision of the

Secretary may, under 42 U.S.C. § 405(g) affirm, modify, or reverse the Secretary's decision with or without a remand to the Secretary for a rehearing." *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).  Here, given the completeness of the record, the nature of the Commissioner's error, and the fact that Plaintiff's application was filed nearly five years ago, *see id.* at 223, remand for further consideration is unnecessary and unwarranted.  Instead, the Court finds, in light of the Commissioner's failure to meet his burden of establishing substantial work in the national economy that Plaintiff can perform, that reversal and remand for an award of benefits is the proper remedy here.

**V.      Conclusion**

The Court finds that the ALJ's decision is not supported by substantial evidence for the reasons set forth herein.  Accordingly, the Court hereby reverses and remands the case to the Commissioner for the calculation and award of benefits.


                                                         s/Mark R. Hornak
                                                         United States District Judge




ecf:            Counsel of record